## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MICHAEL STOREY and TERESA**
**STOREY,**

     **Plaintiffs,**

**vs.**            **Civ. No.  08-207 JH/LM**

**PATROL OFFICER A. GARCIA,**
**SERGEANT TAYLOR, OFFICER JOHN**
**DOE of the Los Lunas Police Department;**
**and VILLAGE OF LOS LUNAS,**

     **Defendant.**

### MEMORANDUM OPINION AND ORDER

   This matter came before the Court on cross motions for partial summary judgment: *Defendants' Motion for Summary Judgment Based Upon Qualified Immunity* [Doc. No. 20], and *Plaintiff Michael Storey's Motion for Summary Judgment* [Doc. No. 9].  After considering the undisputed facts, the law, and the arguments of counsel, the Court concludes that the Defendants' motion should be granted, and the Plaintiff's motion should be denied.

### LEGAL STANDARD

   The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie

if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 1572 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324.

## FACTS

Most of the facts of this case are undisputed. On September 7, 2007, the Los Lunas Police Department dispatched individual defendants Officer Adrian Garcia and Sergeant Thomas Taylor to the home of Plaintiffs Michael and Theresa Storey because a neighbor had reported hearing a loud argument coming from their residence. When Garcia and Taylor arrived at the home, they heard nothing. When they knocked, Michael Storey came to the door, appearing red-faced and agitated. Garcia and Taylor asked Storey if everything was okay, and he informed them that he and his wife had been arguing earlier.[1] Taylor asked Storey if his wife was alright and if she was home, and

---

[1] The parties completed briefing on Michael Storey's motion for summary judgment on May 8, 2008 [see Doc. No. 17], and completed briefing on Defendants' motion for summary

Storey responded that she was not home.  Then, Theresa Storey arrived at the house by car.  She pulled into the garage and entered the house without speaking to the officers.  The officers could not see Theresa Storey, nor did they know if there were any other occupants in the home or if anyone was injured.  Garcia and Taylor asked Michael Storey what the argument with his wife was about. Storey refused to answer, telling the officers that it was none of their business.  Taylor then asked Storey several times to step out of the house, and each time Storey refused.  Taylor then ordered Storey to come outside, and he again refused.  Taylor and Garcia then attempted to put handcuffs on Storey, who was standing near the doorway of the home.  There is a genuine issue of material fact regarding where Storey was standing when Defendants handcuffed him.  Defendants contend that Storey was standing in the threshold of the doorway "or just outside the threshold," while Plaintiffs contend that Storey was inside the home and that Taylor and Garcia reached inside in order to pull him onto the stoop and handcuff him.  For purposes of analyzing Defendants' motion for summary judgment, the Court assumes that Storey was inside the home and that the officers crossed the threshold in order to arrest him.  In any event, after a brief struggle the officers handcuffed Storey.  Then, Garcia transported Storey to the Los Lunas Police Department and later filed a criminal complaint against him for resisting, evading, or obstructing an officer.  In the meantime,

---

judgment on July 25, 2008.  *See* Doc. No. 23.  In neither briefing package did either party make reference to a belt tape recording of the confrontation between Garcia, Taylor, and Storey. Approximately six months later, on January 23, 2009, Michael Storey filed "Plaintiffs' Second Supplemental Exhibit in Support of Plaintiff Michael Storey's Motion for Partial Summary Judgment" without explanation and without leave of court.  Doc. No. 42.  The exhibit is a belt tape of the encounter, and Plaintiff has filed it without informing the Court why he has waited so long to do so.  The Court has listened to the tape but declines to consider it for two reasons. First, the tape was untimely filed and Plaintiff has offered no explanation for the untimeliness. Second, significant portions of the conversation between the officers and Michael Storey are inaudible.

Taylor and a third officer, Robert Ferreyia, entered the home and spoke to Theresa Storey.[2]

In the First Amended Complaint, Michael Storey asserts Fourth Amendment claims for wrongful arrest and false imprisonment (Count I), prosecution without probable cause (Count II), unlawful entry (Count III), and excessive use of force (Count IV), as well as common law tort claims of battery and false imprisonment (Count VI), violation of the Fifth Amendment right to remain silent (Count VII), and violation of his First Amendment rights (Count VIII). Theresa Storey has asserted Fourth Amendment claims for unlawful entry (Count III) and wrongful arrest and false imprisonment (Count V), as well as common law tort claims (Count VI).

Michael Storey has filed a motion for summary judgment on the grounds that Defendants did not have legal justification to arrest him without a warrant in his home. However, he has failed to specify the counts or claims on which he contends he is entitled to summary judgment. Similarly, Defendants have moved for summary judgment based on qualified immunity on the grounds that the law regarding the scope of an officer's authority to separate individuals involved in a domestic dispute is not clearly established. Like Storey, Defendants have failed to specify the claims on which they contend they are entitled to summary judgment.

## DISCUSSION

I. **QUALIFIED IMMUNITY**

A. **Legal Standard**

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established

---

[2] It appears that the facts of Theresa Storey's encounter with the police are not relevant to the two motions currently pending before the Court. The parties have not discussed those facts in their briefs and the Court does not consider them here.

statutory or constitutional rights of which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (internal quotation marks omitted). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In response to Defendants' qualified immunity-based motion for summary judgment, the Plaintiffs must satisfy a heavy two-part burden, showing that (1) the Defendants violated a constitutional or statutory right and (2) the right was clearly established at the time of the Defendant's unlawful conduct. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). *But see Pearson v. Callahan*, --- S.Ct. ----, 2009 WL 128768, No. 07-751 (January 21, 2009) (holding that while two-step sequence for resolving government officials' qualified immunity claims, whereby court must decide (1) whether facts alleged or shown by plaintiff make out violation of constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct, is often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand, receding from *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Furthermore, the Tenth Circuit has held that, for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc). Under this standard, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). Thus, "[t]he relevant dispositive inquiry in determining

5

whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

**B.     Analysis**

It is a " ' basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed.2d 1068 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed.2d 639 (1980) (some internal quotation marks omitted)).  Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.  *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S. Ct. 7, 145 L. Ed.2d 16 (1999) (per curiam).  "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S. Ct. 2408, 57 L. Ed.2d 290 (1978).  One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Id*. at 392.

To establish a constitutional violation, Storey must establish 1) that he was seized; and 2) that the seizure was unreasonable. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  In this case, it is undisputed that Taylor and Garcia seized Storey after he refused to obey Taylor's order that Storey step out of his home.  Indeed, Taylor and Garcia not only arrested

him for that refusal[3], but also charged him with resisting, evading, or obstructing an officer. However, Storey disputes the reasonableness of the arrest on the grounds that Taylor's order to exit the house was an unlawful order which he had a right to disobey because the officers lacked reasonable suspicion to believe that he had committed a crime.  Defendants, in turn, contend that because Garcia and Taylor were called to an alleged domestic disturbance, it was reasonable for them to separate Storey from his wife in order to make sure that the situation had been defused and that no one was injured inside the house.  Thus, Defendants contend that the order to exit the house was lawful.  Defendants argue in the alternative that, even if the order was not lawful, the law on that point was not clearly established on September 7, 2007.

To be clear, this case is not about the right of police to conduct a warrantless *search* of a home to which they have been called on a domestic disturbance in an attempt to ensure that all occupants are safe and that the situation has been defused.  Rather, this case is about the right of police to ask the occupant answering the door in response to a neighbor's report of a domestic disturbance to step outside so that police may question him and his wife separately to ensure that all occupants are safe and that the situation has been defused.  However, the Court has not found, and the parties have not cited, authority from the Supreme Court or the Tenth Circuit which addresses the lawfulness of such an order to exit the home.  Rather, the cases cited by the parties discuss the right of police on a domestic violence call to enter and search a home in order to ensure the safety of the officers and the occupants.  As a result, the Court must examine those decisions and extract the underlying legal principles which illuminate the question presented here.

---

[3] Although Storey argues that Defendants arrested him also for his refusal to answer their questions, the Court need not reach that issue because it concludes that they had a right to arrest Storey for his undisputed failure to obey their lawful order that he exit the house.

1. <u>No violation of Constitutional rights</u>

The analysis begins with two cases from the Tenth Circuit, *United States v. Davis*, 290 F.3d 1239 (10th Cir. 2002) and *United States v. Najar*, 451 F.3d 710 (10th Cir. 2006). Both cases were decided before the 2007 events of this case, and though both are criminal cases, both opinions are instructive regarding the scope of the Fourth Amendment in the context of the police response to domestic disturbance calls. In *Davis*, police responded to an early morning call reporting a possible domestic dispute. When they arrived at the home, the police heard no noise but were met at the door by the partially clad defendant Davis, who had alcohol on his breath and bloodshot eyes. *Id*. at 1240. Davis also told the officers that he had been disciplining his child, which caused the noise, and that his girlfriend was out of town. However, at that moment his girlfriend appeared, wrapped her arms around defendant's waist, and told police that they had been arguing. *Id*. at 1241. Davis refused officers' request to enter the home, but they said they were coming in anyway to check on his girlfriend. *Id*. In response, Davis ordered his girlfriend outside and retreated into the house. *Id*. Both officers entered and told Davis to stop, but he continued to the back of the house and then returned with a child in his arms. *Id*. He then went outside with both officers and asked them to leave his home. In the meantime, another officer remained inside with the girlfriend, who also asked the officers to leave. *Id*. The Tenth Circuit rejected the officers' claim that their warrantless entry into the dwelling was justified by the "exigent circumstances" exception which applies when the circumstances pose a significant risk to the safety of a police officer or a third party. The court reasoned that prior to entering the dwelling, the officers were able to see and interact with the girlfriend, the suspected victim, and ascertain that she was unharmed. *Id*. at 1243. Davis had not displayed aggressive behavior toward her or the police, nor did they believe that he had a reputation for violence. *Id*. Finally, the court stated that because they knew that Davis had children, they

8

should have attributed his withdrawal to the back of the home to that fact rather than assume he might be getting a weapon. *Id*. The court concluded by declining to carve out a special exception to the warrant requirement for police response to domestic violence calls. *Id*. at 1244.

In *Najar*, a police dispatcher received a 911 call at approximately 2 a.m. 451 F.3d at 715. Upon answering, the dispatcher heard silence and then the call was disconnected. The dispatcher made several attempts to reach the 911 caller, but each time his call was answered but quickly disconnected without a word. He dispatched officers to investigate. Arriving at a mobile home, the officers knocked on the door and announced their presence and purpose. *Id*. at 716. They could see and hear a person within the home but received no response to their repeated and vigorous attempts to communicate. *Id*. Eventually Najar came to the door, denied making a 911 call, and said no other person was present in the home. *Id*. Fearing for someone within, the officers entered over Najar's objection. *Id*. at 717. One officer discovered a woman lying motionless, but uninjured, on the floor. *Id*. The other two officers stayed near the entry door in the living room from where they noticed a shotgun leaning against the wall. They seized the shotgun and a criminal history check revealed Najar to be a felon. *Id*. The district court denied Najar's motion to suppress, and the Tenth Circuit upheld that decision. Relying upon the Supreme Court's decision in *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006), the Tenth Circuit in *Najar* applied the following two-pronged test to determine whether the exigent circumstances exception to the warrant requirement applied: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *Id*. at 718. Distinguishing *Davis* on its facts, the Tenth Circuit concluded that the officers had a reasonable grounds to believe that there could be someone in the home with an immediate need for their help. *Id*. at 718-20. In *Davis*, the police officers had spoken with Davis'

9

girlfriend outside the home, they knew Davis had children, and they knew he had no history of violence. *Id*. at 719. That was not the case here, where the repeated 911 hangups gave the officers a reasonable basis to be concerned that someone inside needed their help. *Id*. at 720. Apparently, the Tenth Circuit did not believe that police were forced to accept at face value Najar's statement that there was no one else in the home. Furthermore, the court found the that manner and scope of the search was reasonable because officers did not attempt to search any place beyond those where a victim might be found. *Id*.

In this case, Garcia and Taylor arrived at the Storey's home after being told that a neighbor heard a loud argument coming from their residence. They were met by Michael Storey, who was red faced and agitated. Shortly after they arrived, the police saw a woman, ostensibly Theresa Storey, drive into the garage, but the evidence before the Court indicates that they were unable to see or communicate with her to determine whether she was unharmed or felt safe to remain in the home. They also were unable to determine if there were children or others in the house who were injured or at risk of future injury. Thus, after Theresa Storey's arrival they knew that it was likely that the two people having the argument were in the home together. Finally, due to Michael Storey's refusal to communicate with them, Garcia and Taylor were unable to evaluate whether the argument was likely to flare up again, though Michael Storey's agitated condition could have reasonably raised concern on that point. Faced with this situation, Garcia and Taylor did not intrude into the home to speak with Theresa Storey, to conduct a search of the premises, or for any other purpose. Instead, Taylor ordered Michael Storey to step outside of the home. Defendants argue that this was a proper order because in a domestic dispute, it is appropriate to separate the parties for questioning; further, they contend that separation of the parties in a domestic dispute is necessary to ensure that the possible victim feels comfortable in responding to officers' questions. Storey then

physically resisted their lawful order by refusing to move.

The Court concludes that in light of the foregoing legal authorities and undisputed facts, Taylor's order to Storey to exit the home was both reasonable and lawful.  The situation that confronted the officers at the Storey home was, as far as they knew at the time, one with the potential for further argument and possible violence.  Their attempts to assess whether the domestic dispute had been defused were met with resistance by Storey, and therefore it was reasonable for them to ask him to step out of the house so that they could ensure that Theresa Storey, and any possible children, would be safe if they left the scene.  Garcia and Taylor did not, unlike the police in *Davis* and *Naja*r, barge into the home in order to secure the scene and look for injured victims, which would have been a far more intrusive invasion of the Storeys' Fourth Amendment rights. Instead, they took the more conservative approach of asking Storey to step outside.  Furthermore, at that point they limited their entry into the Storey home to just inside the doorway, where Storey was standing, in order to pull him outside and complete the arrest.

It bears noting that whether the actions of the police are objectively reasonable is to be judged by the circumstances known to them. They were not conducting a trial, but rather were required to make an on-the-spot decision as to whether someone could be in the home in need of medical help; the objective circumstances did not require them to reach the conclusion that there was little or no risk of danger to an occupant of the house.  Thus, the Court concludes not only that the order to step outside was reasonable and lawful, but also that the exigency of the circumstances warranted the arrest of Michael Storey when he refused to obey.

Storey's reliance[4] on the New Mexico Supreme Court's opinion in *State v. Ryon*, 2005-

---

[4] Both parties have relied extensively on opinions from New Mexico state courts regarding the reach and scope of the Fourth Amendment.  However, the parties have not

NMSC-005, 137 N.M. 174, is unavailing.  As Storey accurately points out, in *Ryon* the court created

and discussed New Mexico's "emergency assistance" doctrine, which at that time was identical to

the federal "exigent circumstances" doctrine.  *See* Doc. No. 22 at p. 12.  The *Ryon* court found that

in order for the exception to apply, three elements must be met:

> First, the police must have reasonable grounds to believe that there is an emergency
> at hand and an immediate need for their assistance for the protection of life or
> property.  Second, the search must not be primarily motivated by intent to arrest and
> seize evidence.  Third, there must be some reasonable basis, approximating probable
> cause, to associate the emergency with the area or place to be searched.

*Id*. at ¶ 29, 137 N.M. at 186 (internal citations and quotations omitted).  The *Ryon* court placed

special emphasis on the second element of the test, which requires the proper subjective motivation

by the arresting officers.  Here, Storey contends that his arrest was unlawful because Taylor and

Garcia entered his home for the express purpose of arresting him, in violation of the second prong.

*See* Doc. No. 22 at p. 12.  Thus, argues Storey, the emergency assistance doctrine does not apply and

Defendants violated his Fourth Amendment rights by crossing his threshold.

However, *Ryon* is no longer good law.  In reaching its decision and emphasizing subjective

intent in *Ryon*, the New Mexico Supreme Court relied heavily upon *United States v. Cervantes*, 219

---

provided, nor could the Court find, any authority for the proposition that failure to comply with
state law triggers a Fourth Amendment violation.  In fact, the law is to the contrary.  *See United
States v. Mitchell*, 783 F.2d 971, 973 (10th Cir. 1986) (purported violations of state warrant
statute are irrelevant to determination of whether exclusion proper under Fourth Amendment to
U.S. Constitution); *United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir. 1994) ("State
officers do not by violating state law violate the federal Constitution."); *United States v.
Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) ("The federal inquiry [does not turn] on whether a
state officer violated state law in securing probative evidence."); *United States v. Eastland*, 989
F.2d 760, 766 (5th Cir. 1993) ( "In determining the reach of the Fourth Amendment, it is
well-established that federal law controls."); *United States v. Sutherland*, 929 F.2d 765, 769 (1st
Cir. 1991) ("Evidence obtained in violation of neither the Constitution nor federal law is
admissible in federal court proceedings without regard to state law."); *United States v. Little*, 753
F.2d 1420, 1434 (9th Cir.1984) (same).  Accordingly, the Court must adhere to federal law as
interpreted by the United States Supreme Court and the Tenth Circuit Court of Appeals.

F.3d 882 (9th Cir. 2000), *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976), and *State v. Mountford*, 171 Vt. 487, 492, 769 A.2d 639 (2000). However, in 2006 the United States Supreme Court issued its opinion in *Brigham City*, in which it held that regardless of their subjective motives, police officers were justified in entering a home without a warrant under the exigent circumstances exception to warrant requirement. 547 U.S. 398, 404-05 (2006). The Supreme Court specifically abrogated *Cervantes*, *Mitchell*, and *Mountford* (and, by implication, *Ryon)* and held that an officer's subjective motivation is irrelevant, thereby eliminating the second prong of the test set forth in those cases. 547 U.S. at 402, 404-05. Thus, the fact that Garcia and Taylor entered the Storey home in order to arrest Michael Storey is of little moment.

The Supreme Court has made clear that police may enter a home without a warrant where they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403-04, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006); *see also Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 1525, 164 L.Ed.2d 208 (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur."). Two other circuits have held that a 911 call reporting a domestic emergency, without more, may be enough to support a warrantless search of a home. *See, e.g., United States v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000) (determining that a 911 call where the caller identified himself and stated that the body of a woman who had been raped and murdered could be found in the basement of a particular address was enough to support a warrantless search under the exigent circumstances exception); *United States v. Cunningham*, 133 F.3d 1070, 1072-73 (8th Cir. 1998) (holding that a 911 call from a woman who identified herself and claimed that she was being held against her will justified protective sweep of dwelling). In fact, the Seventh Circuit

has held that in some circumstances police officers may, as part of their community caretaking function, separate parties to a domestic disturbance by ordering one party to leave the premises regardless of whether that order amounts a seizure. *See White v. City of Markham*, 310 F.3d 989, 995-96 (7th Cir. 2002). *See also United States v. Brooks*, 367 F.3d 1128, 1136 (9th Cir. 2004) ("the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy."). In light of the foregoing, the Court concludes that ordering Storey to exit the home was lawful under the circumstances.

Because the Court concludes that Garcia and Taylor's order to Michael Storey to leave the house for questioning was a lawful order, they had probable cause to arrest him for disobeying and physically resisting that order. Thus, Garcia and Taylor are entitled to qualified immunity for both the arrest itself and for crossing the threshold of the Storey home to effect the arrest. Similarly, the Village of Los Lunas is entitled to summary judgment on Count III because under *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a § 1983 claim against a municipal entity cannot be predicated upon respondeat superior liability.[5] Thus, summary judgment will be entered in favor of Defendants on Michael Storey's Fourth Amendment claims for wrongful arrest and false imprisonment (Count I), prosecution without probable cause (Count II), and unlawful entry (Count III), as well as his common law tort claim of false imprisonment (Count VI). Defendants are also entitled to summary judgment on Michael Storey's claims for violation of the Fifth Amendment right to remain silent (Count VII)[6] and violation of his

---

[5] In their First Amended Complaint, Plaintiffs assert only two claims against the Village of Los Lunas: unlawful entry in violation of the Fourth Amendment (Count III), and common law tort claims under Count VI.

[6] In Count VII of his First Amended Complaint, Michael Storey alleges that "Defendants arrested, seized and used excessive force against Plaintiff Michael Storey . . . because Mr. Storey

First Amendment rights (Count VIII) [7] to the extent those claims are based upon his arrest.  Michael

Storey's claim for excessive use of force in Count IV and his common law tort claim of battery in

Count VI, as well as all of Plaintiff Teresa Storey's claims, still remain pending.

2.  Law was not clearly established

In the alternative, the Court also finds that at the time of the events of this case, there was

no clearly established law prohibiting Taylor and Garcia from ordering Michael Storey to exit his

home, or from arresting him for his refusal to obey, under the circumstances with which they were

presented.  Although it is not necessary to have cases covering identical fact situations, broad,

general propositions are insufficient.  It must be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted.  That was not the case here.  Accordingly, as an alternative

holding, the officers are entitled to qualified immunity for this reason as well.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Michael Storey has moved for summary judgment in his favor with regard to the lawfulness

of arrest.  For the reasons stated above, his motion will be denied.

  **IT IS THEREFORE ORDERED** that *Defendants' Motion for Summary Judgment Based*

---

refused to answer the Defendants' questions, in violation of Plaintiff's rights under the fifth
amendment."  Doc. No. 18 at ¶ 56.  Having found that the arrest of Storey was lawful, the Court
concludes that the arrest cannot form the basis for a Fifth Amendment claim.  The parties have
not briefed the question of whether the Defendants' alleged use of excessive force can form the
basis for Storey's claim, and the Court expresses no opinion on that issue.

[7] In Count VIII of his First Amended Complaint, Michael Storey alleges that "Defendant
Garcia and Taylor's actions in wrongfully arresting and charging plaintiff without probable
cause were undertaken in retaliation for his exercise of his protected right to freedom of speech."
Doc. No. 18 at ¶ 61.  However, the Court has found that the arrest was not wrongful and
therefore cannot have been retaliatory.  Hence, Defendants are entitled to summary judgment on
this claim as well, at least to the extent it is based on his arrest.  Once again, the parties have not
briefed the question of whether the Defendants' alleged use of excessive force can form the basis
for Storey's claim, and the Court expresses no opinion on that question.

*Upon Qualified Immunity* [Doc. No. 20] is **GRANTED**, and *Plaintiff Michael Storey's Motion for*

*Summary Judgment* [Doc. No. 9] is **DENIED**.


_____

**UNITED STATES DISTRICT JUDGE**