IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL STOREY and TERESA
STOREY,

          Plaintiffs,

vs.                                    Civ. No. 08-207 JH/LM

PATROL OFFICER ADRIAN GARCIA,
SERGEANT TAYLOR, OFFICER ROBERT
FERREYIA of the Los Lunas Police Department;
and VILLAGE OF LOS LUNAS,

          Defendant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Plaintiff Michael Storey's Second Motion for Reconsideration of Summary Judgment* [Doc. No. 72], in which he asks the Court to reconsider its decision granting Defendants summary judgment on certain claims in light of the Tenth Circuit's opinion in *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010). In ruling upon the motion, the Court has considered Storey's opening brief, both responses by Defendants, and Storey's reply. After reviewing these as well as the controlling law, the Court concludes that the motion to reconsider should be denied.

## DISCUSSION

### I.   THE *LUNDSTROM* OPINION

The facts in *Lundstrom* are as follows. Joseph Lundstrom's neighbor called 911 reporting that she heard a woman at Lundstrom's residence screaming at and beating a toddler or infant, as well as the cries of the child. Approximately 40 minute after that call, at around 9:30 p.m., police

officers arrived at Lundstrom's residence. Officer Debra Romero, who was in full uniform, rang the doorbell, which was answered by Lundstrom. She could hear a high pitched voice inside the house but could not determine if it was a woman or a child. Romero identified herself as a police officer and informed Lundstrom that she was there to check on the welfare of a child. According to Romero, Lundstrom became hostile and stated that there was no child in the house. Romero said that she needed to enter the house to make sure that there was no child in need of assistance within. However Lundstrom, who was suspicious that Romero was not a police officer, would not allow her inside. According to Romero, he shouted an expletive and slammed the door shut–a contention that Lundstrom denies. Although there is a fact dispute as to the circumstances, eventually Romero pointed her gun at Lundstrom, believing that he might be holding a weapon. At that point, Lundstrom's female companion, Jane Hibner, came to the door and placed herself between Romero and Lundstrom such that the gun was temporarily pointed at her. When Romero was satisfied that Lundstrom was holding a phone and not a weapon, she lowered her gun. Hibner then left the house of her own accord and walked into the front yard, while Lundstrom remained in the house and closed the door. Additional police officers arrived, with four (including Romero) positioning themselves in front of the home, and a fifth who entered the back yard to observe a visibly upset Lundstrom through a window. Eventually, the officers at the front of the house handcuffed and patted down Hibner, though they failed to question her about the possible presence of a child inside the home. Meanwhile, inside the house Lundstrom called police dispatch, which confirmed several times that the police officers outside were indeed legitimate and authorized to be there. The dispatcher instructed Lundstrom to go outside with his hands in the air, which he eventually did. Lundstrom testified that the officers were pointing their weapons at him, and that they handcuffed him and threw him on the ground, injuring him in the process. They placed him in a police car for

thirty to forty five minutes while they searched his home and interviewed both him and Hibner. The police found no child inside the residence. The officers released Lundstrom and Hibner and informed them that they were free to go. No charges were ever filed against either of them.

With regard to the seizures of Lundstrom and Hibner, the Tenth Circuit had five conclusions. First, it held that neither Lundstrom nor Hibner was illegally seized when Romero briefly pointed her gun at them at the front door. *Lundstrom*, 616 F.3d 1108, 1121-22 (10th Cir. 2010). Second, it concluded that officers unreasonably seized Hibner by handcuffing her and directing her to remain seated after she left the house. *Id*. at 1122-23. The Tenth Circuit pointed out that Hibner had cooperated with the officers, there was not yet any evidence of a child in the home, and none of the officers had interviewed Hibner about a child in the home. *Id.* at 1123. Thus, the court concluded that Hibner's detention was not reasonably related in scope to the investigation. *Id*. Third, the court found that police unreasonably seized Lundstrom when they surrounded his house and ordered him to exit because exigent circumstances were absent. *Id*. at 1123-25. Fourth, the court held that when officers handcuffed Lundstrom, this continued the unreasonable detention that began when he was ordered out of the house. *Id*. at 1125. Fifth, the Tenth Circuit stated that the law on these issues was clearly established. *Id*. at 1125-26.[1]

## II.     EFFECT OF *LUNDSTROM* ON THIS CASE

In this case, the central issues are (1) whether under the circumstances presented, the police had authority to order Michael Storey to step out from his doorway onto his front porch so that

---

[1] The Tenth Circuit went on to address Lundstrom's excessive force and unreasonable search claims as well. However, as Storey's Fourth Amendment claims for excessive force and unreasonable search are not currently before the Court, that portion of the *Lundstrom* opinion is not relevant here.

3

police could speak with him and his wife separately regarding a loud argument that prompted a neighbor to call 911, so that police could determine if anyone inside the home was injured or whether they fight was likely to flare up again, and (2) whether the law on the previous question was clearly established. The Court will address each question in turn.

### A.  Fourth Amendment Violation

In his motion to reconsider and supporting briefs, Storey argues (and the Court agrees) that the relevant portion of the *Lundstrom* opinion is the Tenth Circuit's discussion of the seizure of Storey when police ordered him to come out of his home. *See* Doc. No. 72 at 2. An examination of the facts in *Lundstrom*, as well as the Tenth Circuit's application of law to those facts, demonstrates that *Lundstrom* is distinguishable from the case currently before this Court.

First, in *Lundstrom* the neighbor who called 911 described the voice of a woman possibly abusing a child. However, when the police arrived and Hibner voluntarily came outside of the house, the police failed to question her about a child in the home. Instead, they continued to focus on Lundstrom, even though they had no objective basis to believe that he might be involved in any abuse of a child. Simply stated, the Tenth Circuit concluded that the circumstances did not support an intrusion into Lundstrom's Fourth Amendment rights because the officers lacked a "particularized and objective basis" for suspecting him of wrongdoing. *Lundstrom*, 616 F.3d at 1124. In contrast, this case presents a situation in which police dispatch received a complaint about a domestic disturbance between a man and a woman, which the Defendants were sent to investigate. Thus, under the circumstances it was reasonable for Defendants to not only question Mr. Storey, but also to attempt to speak to him separately from his wife in order to determine what had happened and whether or not the situation had been defused.

4

Next, the Tenth Circuit concluded that the intrusion into Lundstrom's rights was unreasonable in part because the neighbor who originally called to report alleged child abuse had backtracked on the details of her initial report, expressing doubt as to whether or not she had provided police with the correct address. That piece of information, combined with the facts that Lundstrom told police that there was no child in the house, that the police failed to question Hibner on the matter, and that no other corroborating evidence suggested the presence of a child in the house, led the Tenth Circuit to conclude that it was unreasonable for police to order Lundstrom out of his home. *Id*. The present case is distinguishable on these points as well. Here, Storey confirmed to Defendants that he had a loud argument with his wife, and although he initially told them that she was no longer at home, the police saw her return to the house. Thus, the police could verify that the two participants in the altercation were both present, but without talking to both Storey and his wife they had no way to confirm that no one was injured or that the argument would not flare up again. Storey's refusal to cooperate prevented the police from making that assurance.

Finally, the Tenth Circuit concluded that under the circumstances of that case, in which police failed to interview Hibner and there was doubt as to the accuracy of the report of child abuse, "no exigent circumstances existed which would justify Lundstrom's seizure." *Id*. Once again, the facts in this case are distinguishable. In *Lundstrom*, the police had an opportunity to corroborate the information they received from dispatch, but they failed to interview Hibner in order to attempt to do so. Further, in that case they apparently ignored information that the phone tipster had retracted her original story, at least in part. These facts all contributed to a lack of exigency in *Lundstrom*. Here, in contrast, Storey actually *confirmed* the caller's report of a loud domestic argument, but then actively denied the Defendants the opportunity to discuss the incident with him or with his wife. Effectively, Storey attempted to tell the police that everything was fine and no one was injured while

5

denying them the opportunity to determine that for themselves, or to at least gain that reassurance from Mrs. Storey.  In that situation, with no other way to determine what had happened inside the Storey household during the domestic disturbance, the Defendants were faced with the choice of either forcing the issue by ordering Storey outside of the house so that they could speak with him and his wife separately, or walking away from the home and taking the risk that they were either abandoning an injured occupant or leaving a violent situation to flare up again after their departure.  For this reason, the Court concludes that the exigent circumstances that the were absent in *Lundstrom* were present here.

### B. Clearly Established Law

As to the second question outlined above, and as the Court noted in its Memorandum Opinion and Order entered January 30, 2009, neither the parties nor the Court found authority from either the Tenth Circuit or the Supreme Court addressing whether police, when called to a domestic disturbance, may order an individual outside of his home in order to question husband and wife separately to ensure that all occupants are safe and that the situation has been defused.  On the other hand, there is some authority from the Seventh and Eighth Circuits that police may perform a warrantless *search* of a home after receiving a 911 call reporting domestic abuse.  In this case, unlike in *Lundstrom*, the police did not enter the Storey home and perform a search—which is a far more intrusive invasion of an occupant's Fourth Amendment rights—but rather requested that Storey step outside his home for questioning outside the presence of his wife.  When he failed to obey that order, they reached across the threshold to arrest him for his disobedience.  In short, the Court remains convinced that the law governing the Defendants' actions on this occasion was not clearly established.

For all the foregoing reasons,

**IT IS THEREFORE ORDERED** that *Plaintiff Michael Storey's Second Motion for Reconsideration of Summary Judgment* [Doc. No. 72] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**