IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL STOREY & TERESA STOREY,

      Plaintiffs,

v.                                  No. 08-CV-207-JH/LM

PATROL OFFICER A. GARCIA, et al.,

      Defendants.

## MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Comes now Defendants Sgt. Thomas Taylor and Robert Ferreyia, by and through their attorneys Sparks Willson Borges Brandt and Johnson, P.C. (Gregory V. Pelton) and, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, request the court enter a judgment notwithstanding the jury verdict or in the alternative for a new trial. In support of the motion these Defendants show to the court as follows:

### General Background

At the conclusion of the Plaintiffs' case, these Defendants moved for a directed verdict on several issues which included qualified immunity, insufficient evidence of an unlawful entry and insufficient evidence of unlawful seizure. These Defendants renewed their request for a directed verdict at the conclusion of the defense's portion of the case.

Both at the conclusion of the Plaintiffs' case and at the conclusion of the defense, the court indicated it was taking the motions under advisement. The jury subsequently returned a verdict of $1.00 in nominal damages in favor of Teresa Storey and against Defendants Taylor and Ferreyia on her claims of unlawful seizure and entry. The jury also returned a verdict of $7,000.00 in punitive damages against Defendant Taylor. The

jury could not reach a unanimous verdict as to whether Taylor used excessive force in arresting Mr. Storey.

The court has not yet ruled on the motions taken under advisement but has entered partial final judgment as to certain portions of the jury verdict. Since trial, Michael Storey has indicated he is dismissing his excessive force claim with prejudice. Therefore, only the claims of Teresa Storey remain for the trial court to address.

## Point I

## Defendants Are Entitled to Qualified Immunity on the Claims by Teresa Storey for Unlawful Seizure and Unlawful Entry

Qualified immunity should be granted to police officers when they should not reasonably know their conduct violates established constitutional rights. Qualified immunity operates to ensure that, before public officials are subjected to suit, they are on notice their conduct is unlawful. While the Plaintiff need not show that the specific action at issue has previously been held unlawful, the alleged unlawfulness must be apparent in light of pre-existing law. The contours of the right must be sufficiently clear a reasonable official would understand that what he is doing violates that right.  If the Plaintiff is unable to demonstrate the law allegedly violated was clearly established, the Plaintiff is not allowed to proceed with the suit.  Immunity applies if reasonable officials could disagree as to whether the conduct violated the Plaintiff's rights. See *Thomas v. Cohen* 304 F.3d 563 (6th Cir. 2002).

Defendants submit the law was not clearly established they could not enter a home when responding to a 911 complaint of domestic disturbance. Indeed, Defendants contend the trend of authority across the country is to recognize police officers have the

right to make such an entry. Nor was the law clearly established that they could not order one participant to a reported domestic dispute to stay inside her home while they dealt with the other participant outside.

As a preliminary matter, this court must first determine if there was a constitutional violation by Defendants in either entering Mrs. Storey's home or in ordering her to remain in her home while they concluded their police business with Mr. Storey. To do so the court has to determine if the facts, taken in a light most favorable to the police officer, show his conduct violated a constitutional right. See *Meredith v. Erath* 342 F.3d 1057 (Ninth Cir. 2003).

If the court determines there was no constitutional violation, the inquiry ends and the court need not determine if the law was clearly established. See *Christiansen v. City of Tulsa* 332 F.3d 1270 (10th Cir. 2003).

There is also a strong presumption state actors have properly discharged their official duties and, to overcome that presumption, the plaintiff must present clear evidence to the contrary. See *Gardenhire v. Schubert* 205 F.3d 303 (6th Cir. 2000). The Tenth Circuit has recognized qualified immunity is proper when the plaintiff fails to cite any case law demonstrating the violation of a clearly established constitutional right. See *Camfield v. City of Oklahoma City* 248 F.3d 1214 (10th Cir. 2001).

In this case, Plaintiff has not cited this court to any case law demonstrating it is a violation of a constitutional right for a police officer, responding to a domestic disturbance, to enter the home or to direct one of the occupants of the home to remain inside the home while an arrest is being made just outside the home.

In fact, several circuits have either expressly or impliedly ruled that they would extend emergency exigent circumstances to include police response to 911 reports. The court has already cited, in its initial Memorandum Opinion, *U.S. v. Cunningham* 133 F.3d 1070 (8th Cir. 1998); *U.S. v. Richardson* 208 F.3d 626 (7th Cir. 2000) and *U.S. v. Brooks* 367 F.3d 1128 (9th Cir. 2004).

Another case from the Seventh Circuit makes it clear what their position is on this issue. In the case of *Hanson v. Dane County, Wisconsin* 608 F.3d 335 the Seventh Circuit ruled that, when there is a 911 call which then hangs up and no one answers on a call back, police are justified in entering without permission. In that case, police entered without permission in question all four occupants and learned that there had been a heated argument between a husband and wife. In that case, the wife had even asked the police to leave and told the police she was fine but the court ruled the police were not obligated to leave. The Seventh Circuit acknowledged "Many victims of domestic violence fear that the danger they face will increase if they assist police or prosecutors….. So the police acted reasonably by continuing their investigation and questioning Karen and David (the husband and wife) outside of each other's presence."

It appears other circuits either have or are likely to similarly hold police may enter a house in response to a 911 emergency. In the case of *Tierney v. Davidson* 133 F.3d 189 (2nd Cir. 1998) the police responded to a domestic dispute reported by an anonymous neighbor. The house was quiet as the police officer approached. The officer then opened the door through a broken window pane and entered the house without knocking or identifying himself. He then encountered the plaintiff whose face was red and appeared upset and shaken. The homeowner told the police officer to get out of the house and

when the officer questioned her about if anyone else was in the house or with whom she had argued, she responded it was none of his business. Nevertheless, the police continued their investigation including inspecting the children's bedroom. Like Mrs. Storey, the plaintiff claimed a Fourth Amendment violation of unlawful entry into their house without a warrant.

The Second Circuit stated "Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." The Second Circuit acknowledged that exigent circumstances do not end merely because the victim indicates she is no longer in danger. Police officers have to make an independent determination in light of the totality of the circumstances. The Second Circuit indicated it may even have been a dereliction of duty by the police to have left the premises without ensuring that all danger had passed.

The Eleventh Circuit dealt with a 911 call reporting gunshots and an argument from a residence. The police responded. The husband and wife were on the porch when the police arrived. They were directed to step off the porch. The husband complied but the wife did not. Ultimately, the wife finally complied by stepping off the porch but refused to raise her hands. Both she and her husband were handcuffed and placed into police cars. The police then entered the home and investigated to see if there were any victims. The Eleventh Circuit held "emergency situations involving endangerment to life fall squarely within the exigent circumstances exception. It is difficult to imagine a

5

scenario in which immediate police action is more justified than when a human life hangs in the balance."

The Eleventh Circuit held the officers reasonably believed an emergency situation justified a warrantless search of the plaintiff's homes for victims.

> "Thus, when an emergency as reported by an anonymous caller, the need for immediate action may outweigh the need to verify the reliability of the color…. In light of the nature of the 911 call, a lesser showing every liability then demanded in J.L. was appropriate in order to justify the search of Appellant's home. Because the police had no reason to doubt the veracity of the 911 call, particularly in light of the personal observations of the officers once they arrived on the scene, their warrantless search for victims was constitutional."

The Eleventh Circuit went on to explain their rationale.

> "This result makes sense. Not surprisingly, 911 calls are the predominant means of communicating emergency situations. *United States v. Richardson* 208 F.3d 626, 630 (7th Cir. 2000). Such calls are distinctive in that they concern contemporaneous emergency events, not general criminal behavior. Additionally, the exigencies of emergency situations often limit the ability of a caller to convey extraneous details, such as the identifying information. Furthermore, some callers, particularly neighbors, may be understandably reticent to give identifying information for fear of retaliation or danger. Thus, the fact that a 911 caller chooses or is forced to remain anonymous may very well have little bearing on the veracity of the caller. If law enforcement could not rely on information conveyed by anonymous 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed."

See *U.S. v. Holloway* 290 F.3d 1331 (11th Cir. 2002).

The Sixth Circuit has also addressed whether a 911 call can, under certain circumstances, justify a warrantless entry into a home. In the case of *Thacker v. City of Columbus* 328 F.3d 244 (6th Cir. 2003) the husband had allegedly injured himself and the wife called 911. Due to the nature of the report, there was some concern about a possible

suicide. When the police arrived, the husband was intoxicated, used profanity and was belligerent with the police. He refused entry to the police. The police determined he was not a reliable source of information and entered the apartment to investigate a possible crime, assist the husband and any other injured persons and determine whether it was safe for the paramedics to enter the apartment.  Although the Sixth Circuit did not decide whether a 911 call alone could justify a warrantless entry into a private home, they did determine the police did have exigent circumstances to enter the house. "The officers were placed in a difficult position in that they were duty bound to respond to Thacker's request for assistance, but also rebuffed when they attempted to do so."

As many as six different federal circuits may have recognized the right of police officers to enter a home in response to a 911 emergency call. The trend across the country appears to allow such an entry in cases such as this.  Certainly there was no clearly established law to the contrary at the time of this incident.

Therefore the court should grant qualified immunity to Sgt. Thomas Taylor and Officer Robert Ferreyia as to Mrs. Storey's claims.  Accordingly, the nominal damages and punitive damages award should be set aside.

## Point II

### There Is No Evidence Thomas Taylor Ever Entered the Storey Home

The transcript of Mrs. Storey's trial testimony does not establish Sgt. Taylor ever entered her home except to affect the arrest of Mr. Storey. (Trial transcript page 62-63) Mrs. Storey testified it was Officer Ferreyia who initially entered her home and grabbed the door and closed it (see attached transcript Exhibit A at page 20).  She further testified the officer that came back to the door was Officer Ferreyia. See transcript pages 33-34.

At pages 74 through 78 of her trial testimony, Mrs. Storey described what Officer Ferreyia was doing during her dealings with the police but she does not mention what Taylor was doing.  Mrs. Storey testified she did not remember Sgt. Taylor talking to her at all (page 80).

She testified her dealings were with Officer Ferreyia, not Taylor. Certainly Sgt. Taylor testified he did not enter her home. The other police officers also testified they did not see Sgt. Taylor enter her home. Defendants believe Mr. Storey testified he did not see who entered their home. Therefore, any claim of unlawful entry against Sgt. Taylor would be based solely upon the testimony of Mrs. Storey. If she did not testify to that effect, there is no evidence (much less substantial evidence) to support a claim of unlawful entry by Sgt. Taylor.

Accordingly, the court should enter a judgment notwithstanding the verdict as to the alleged unlawful entry by Sgt. Taylor.

## Point III

### There Is No Evidence Thomas Taylor "Seized" Teresa Storey

Once again the police officers did not testify Sgt. Taylor ever ordered Mrs. Storey to do anything.  Mrs. Storey clearly testified it was Officer Ferreyia who allegedly "ordered" her to remain in the house while her husband was being arrested. (See page 20 of trial transcript). She never testified Sgt. Taylor ever made a similar order. As set forth previously, Mrs. Storey doesn't even recall ever talking with Sgt. Taylor. If she never talked with him he could certainly never have "seized" her.

There was no evidence of improper tone of voice or other evidence to suggest Sgt. Taylor's conduct toward Mrs. Storey which would have lead an objectively reasonable person to believe she was limited in her abilities to move around the house or was otherwise "seized." The belt tape unequivocally establishes Sgt. Taylor requested only her husband's identification and did so using the word "please." The test is not what Mrs. Storey subjectively believed but what a reasonably objective person would have believed.

In addition, Mrs. Storey acknowledged, at trial and deposition testimony she was not limited in moving around the house even after her dealings with Officer Ferreyia. See page 84 of her trial testimony. There was simply no evidence to substantiate any reasonable belief she was in any way "seized" by any police officer and especially by Sgt. Taylor.

Therefore, there was not substantial evidence to support a jury verdict Sgt. Taylor unlawfully "seized" Teresa Storey. If there was no substantial evidence of either an unlawful entry or an unlawful seizure by Sgt. Taylor, the punitive damages award must necessarily be set aside since it is only against Sgt. Taylor.

**Point IV**

**There Was Not Substantial Evidence to Support Nominal Damages against Officer Ferreyia**

Since the jury only awarded collectively the sum of $1.00 against Sgt. Taylor and Officer Ferreyia, the monetary value in question is not large but it nevertheless remains significant because Plaintiff's' counsel will undoubtedly seek substantial attorneys fees

based upon a nominal damage recovery. Therefore the $1.00 in question becomes very important.

At the conclusion of the Plaintiffs' case, as well as at the conclusion of the defense, Officer Ferreyia sought a directed verdict and is therefore entitled to request a judgment notwithstanding the verdict.

There was insufficient evidence for the jury to determine Officer Ferreyia unlawfully entered the house. From the belt tape and testimony, it was clear Mr. Storey wanted the front door closed to keep his dogs from getting out. Therefore Officer Ferreyia's initial entry was consensual. There was not substantial evidence to suggest a nonconsensual initial entry.

The Court should also determine no constitutional violation occurred when a police officer steps inside a home to close the front door to keep occupants of the home from interfering with a lawful arrest taking place immediately outside the front door. If it was appropriate for Sgt. Taylor to order Mr. Storey to step from the house to obtain separation, it would be equally appropriate to allow Officer Ferreyia to take one step inside the house to grab the front door handle and close the door to keep Mrs. Storey separated from her husband.

The second alleged "entry" was disputed by all three police officers who denied Officer Ferreyia ever entered the home. Mrs. Storey was far from consistent on this issue. She acknowledged she gave deposition testimony to the effect that Officer Ferreyia was outside the house when she went to get her husband's drivers license and was **still** outside the house when she returned.

**Question:** And then I take it that's exactly what you did? You went to his office, your husband's office, got his drivers license and came back to the front door?

**Answer:** Right.

**Question:** Is Ferreyia **still outside?**

**Answer:** Yes. (Emphasis ours)

See page 78 of her trial testimony.

There was simply not enough evidence for the jury to consider Officer Ferreyia ever actually entered the house lawfully or unlawfully. Therefore the court should enter a judgment notwithstanding the verdict as to the nominal damages awarded against Officer Ferreyia.

## Point V

## The Ratio of Punitive Damages to Nominal Damages Is Constitutionally Excessive Under the Due Process Clause

The jury awarded nominal damages of $1.00 but yet awarded $7,000.00 in punitive damages against Sgt. Taylor. Therefore there is a ratio of 7000 to one between actual damages and punitive damages.

The Supreme Court has recognized, as a general rule, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." The courts have recognized single-digit ratios "more likely to comport with due process. See *State Farm Mutual Auto Insurance Co. v. Campbell* 538 U.S. 408, 123S.Ct. 1513, 155 L.Ed.2d 585 (2003) citing *BMW of N. Am. Inc. v. Gore* 517U.S. 559, 116 S. Ct. 1589, 134 L.Ed2d 809 (1996).

In determining the appropriate ratio between punitive damages and compensatory damages the courts have recognized three primary factors to be considered by the court. 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. See *State Farm, supra*.

In determining the reprehensibility, courts look to whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." See *State Farm* 538 U.S. at 419, 123S.Ct. 1513. Determining the degree of reprehensibility ultimately involves a legal conclusion. See *Mendez v. County of San Bernardino* 540 F.3d 1109 (9th Cir. 2008).

The alleged conduct did not relate to the health or safety of Mrs. Storey. Had the jury determined there had been any significant emotional injuries to Mrs. Storey, they would not have awarded nominal damages only. There was no evidence of financial vulnerability. There was no evidence the conduct was repeated but was only an isolated incident.  There was no evidence the conduct toward Mrs. Storey involved intentional malice, trickery or deceit.  The harm was more as a result of the elevated emotions immediately following a struggle with her husband as opposed to trickery or deceit relating to Mrs. Storey.

The evidence at trial relating to Mrs. Storey's claims exclusively involved only Officer Ferreyia. From the verdict, it was apparent the jury was not happy with how Sgt. Taylor interacted with Mr. Storey but his only comment of a negative nature to Mrs. Storey was to the effect Mr. Storey wasn't going to talk to Sgt. Taylor like he talked to his wife. While that might not have been a charitable thing to say under the circumstances, it is far from a constitutional violation and certainly not a significant constitutional violation. The statement does not constitute an unlawful entry or an unlawful seizure as to Mrs. Storey.

It is apparent the jury was attempting to punish Sgt. Taylor for how he dealt with Mr. Storey even though they could not reach a unanimous verdict on the only real issue as to whether Sgt. Taylor used excessive force.

In any case the conduct of Sgt. Taylor was not sufficiently egregious to justify a 7000 to 1 ratio. This is simply not a case where physical injuries were induced. Any emotional injuries were apparently not sufficient enough to justify Mrs. Storey seeing a counselor of any type. In fact, the interaction between Sgt. Taylor and Mrs. Storey it appears to have been substantially limited. This is not a case where Sgt. Taylor then pursued criminal proceedings against Mrs. Storey, beat her up, filed a false police report, or did any of the other kinds of conduct typically associated with a punitive damages award. It may well be that the jury was not happy with how Sgt. Taylor interacted with Mr. Storey but that cannot form a basis for punitive damages.

The second factor to be considered also does not militate in favor of an award of punitive damages to the extent decided by the jury. While courts have recognized the single-digit ratio may not apply to nominal awards in civil rights litigation it is still a

factor to be considered. For instance, in *Mendez* the Ninth Circuit affirmed a district court which reduced a $250,000 punitive damages award down to $5,000 in a case involving nominal damages. The Ninth Circuit recognized that while the second factor may have reduced relevance in Section 1983 lawsuits involving only nominal damages it still has relevance.

Factor number three appears to have no bearing on this determination in this case as there are no comparable civil penalties applicable.

Since there was no basis for a punitive damages award, the ratio is clearly excessive once the various factors are considered. If the court, by some chance, decides punitive damages are appropriate, they should be substantially reduced to be more in line with the normal punitive damages/compensatory damages ratio.

## Conclusion

These Defendants believe the law regarding police response to a 911 domestic disturbance was not well established in the Tenth Circuit although every other circuit which had addressed the issue has either allowed entry to verify the well-being of occupants or indicated an inclination to do so should a ruling be necessary. No courts, to Defendants' knowledge, had held to the contrary. Therefore, neither Sgt. Taylor nor Officer Ferreyia could reasonably have known they were violating clearly established constitutional rights. Therefore, they are entitled to qualified immunity as to Mrs. Storey's claims.

Substantial evidence is required to support any jury verdict. Neither the trial testimony of Mrs. Storey nor anyone else supports a determination by the jury Sgt. Taylor either ever entered the house or ever "seized" Mrs. Storey.

Nor is there substantial evidence to indicate Officer Ferreyia acted improperly reaching inside the house to close the door and in ordering Mrs. Storey to remain inside. Such would not constitute either an "unlawful" seizure or a "seizure."

Finally, if the court does determine there is some basis for punitive damages against Sgt. Taylor, those should be reduced to a more reasonable ratio to the nominal damages awarded.

Dated:  January 3, 2011.

>Respectfully submitted,
>
>SPARKS WILLSON BORGES
>BRANDT & JOHNSON, P.C.
>
>*/s/ Gregory V. Pelton*_____
>Gregory V. Pelton
>24 S. Weber Street, Suite 400
>Colorado Springs, CO  80903
>(719) 634-5700
>Email:  gvpelton@sparkswillson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of January, 2011, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph P. Kennedy
Shannon L. Kennedy
1000 Second Street NW
Albuquerque, NM  87102
Email:  jpk@civilrightslawnewmexico.com

>*/s/ Gregory V. Pelton*_____
>Gregory V. Pelton