IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MICHAEL STOREY and TERESA STOREY,**

     **Plaintiffs,**

vs.               Civ. No.  08-207 JH/LM

**PATROL OFFICER ADRIAN GARCIA,
SERGEANT THOMAS TAYLOR, OFFICER ROBERT
FERREYIA of the Los Lunas Police Department,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendants' *Motion for Judgment Notwithstanding the Verdict* [Doc. No. 101]. In their motion, the Defendants ask the Court to set aside the jury verdict in favor of Plaintiff Teresa Storey ("Teresa") and against Defendants Thomas Taylor ("Taylor") and Robert Ferreyia ("Ferreyia") and to enter judgment as a matter of law on grounds of qualified immunity. The Court has reviewed the briefs filed by the parties, the trial testimony of Teresa Storey, and the applicable legal authorities, and concludes that the motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2010, this case came on for a jury trial on Plaintiff Michael Storey's claim of use of excessive force and Plaintiff Teresa Storey's claims of unlawful seizure and entry. On December 16, 2010, after the close of the Plaintiffs' case, the Defendants moved for judgment as a matter of law. The court did not rule, instead taking the motion under advisement. On December 17, 2010, at the close of all the evidence, the Defendants renewed their motion for judgment as a matter of law. Again, the Court took the motion under advisement. On December 20, 2010, the jury

returned its verdict, finding in favor of Teresa on her Fourth Amendment claim of unreasonable seizure or unlawful entry against Defendants Taylor and Ferreyia. The jury awarded Teresa one dollar in nominal compensatory damages against both Defendants and $7,000.00 in punitive damages against Taylor only.[1]  On December 21, 2010, the Court entered its Partial Final Judgment in favor of Teresa. Then, on January 3, 2011, Teresa filed her motion for judgment as a matter of law, asking this Court to set aside the jury's verdict in favor of Teresa.

## LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "Rule 50(b) ... sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc*., 546 U.S. 394, 400 (2006). The rule states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment ... the movant may file a renewed motion for judgment as a matter of law . . . . In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). Much like a rule 50(a) motion, "[a] renewed motion for judgment as a matter of law under Rule 50(b) . . . must state the grounds on which it was made." 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 604–05 (3d ed. 2008).

---

[1] With regard to Michael Storey's excessive force claim, the jury found in favor of Defendant Adrian Garcia but hung on the issue of whether Thomas Taylor was liable for use of excessive force. After the conclusion of the trial, Michael Storey voluntarily dismissed his excessive force and battery claims against Taylor. [Doc. No. 102].

"Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006). It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 530 F.3d 1260, 1269 (10th Cir. 2008). However, the court must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. Further, the court must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party—in this case, Teresa Story. *McInnis*, 458 F.3d at 1136. *See also Hysten*, 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.' ").

## DISCUSSION

**I.   QUALIFIED IMMUNITY**

    **A.   Facts**

Defendants Ferreyia and Taylor renew their motion for qualified immunity. In their brief, the Defendants do not discuss in any detail the evidence before the jury at trial. Instead, they argue that on September 7, 2007, the day of the events of this case, there was no clearly established law prohibiting their conduct. However, as discussed above, the Court must first set forth the facts before it can determine whether the Defendants violated Teresa's constitutional rights or whether the law was clearly established. Viewed in the light most favorable to Teresa, the nonmovant, the relevant evidence at trial was as follows.[2]

---

[2] As is often the case, the evidence at trial differed from that presented to the Court on summary judgment.

On the afternoon of September 7, 2007, Plaintiffs Michael and Teresa Storey were alone in their home when they had an argument about a $35 service charge on a credit card bill.  Police received a call reporting a loud argument coming from their residence.  The Defendant officers were dispatched to the home.  When they arrived, Michael Storey opened the door.  Upon questioning, Michael Storey acknowledged that he and his wife had an earlier disagreement, and he stated that Teresa was not home.  Shortly thereafter, Teresa arrived in her car after picking up the couple's teenage daughters at school.  As she pulled up to the house, she saw her husband in the front doorway of the house speaking to uniformed officers standing just outside the door, which was open wide.  Having no idea why the police officers were there, Teresa pulled into the garage and quickly entered the house through the door connecting the garage to the house.  Once inside, she started moving quickly toward the front door.  As she did so, she saw the officers step inside the entryway and pull Michael Storey outside, performing a "take down" of her husband in an arm-bar hold.  She heard an officer say, "You're going to jail."  Teresa immediately told her daughters to put the dogs in the back room of the house.  Then Ferreyia briefly entered the house and closed the front door behind him, forcing Teresa to jump out of the way.  As he did so, he pointed to Teresa and said in a rude, commanding tone, "You stay in that house.  You stay in that house now."  At that point, Teresa felt that she could not leave the house, though she wanted to see what was happening to her husband.  Accordingly, using the glass to the side of her front door, Teresa observed the defendants arresting Michael Storey.  From this vantage point, Teresa could both see and hear the struggle occurring just outside the front door as the defendants put handcuffs on Michael.  She then watched as her husband was led away from the house.

Teresa stood in the entryway in front of the door with her crying daughters behind her. Eventually, Ferreyia opened the front door of the house and entered with an angry demeanor,

4

pointing at Teresa. She backed away from him as he did so, taking eight to ten steps back. Then Ferreyia turned and went out the front door. Later, Taylor[3] entered the house, pointing at Teresa and walking toward her, shouting "Give me your driver's license and your husband's driver's license now." Again, Teresa was backing away from Taylor. She asked Taylor for permission to go into the office to retrieve the licenses, and he consented. Teresa got the driver's licenses while Taylor moved back toward the front door and went outside. After getting the licenses, Teresa went to the front door to give them to Taylor. Before she handed them to him, she asked, "Can you tell me why you need these driver's licenses?" Once more, Taylor pointed at her and said, "Because you broke the law." Teresa responded, "How?" and Taylor laughed. He said, "You were arguing with your husband outside." Teresa then said that she was not outside arguing. Taylor responded, "Now you're going down the same path as your husband." Teresa did not say anything. Then Taylor demanded, "You tell me what you were arguing about." Teresa responded, "It was trivial," at which point Ferreyia became angry. He yelled at Teresa, "You're going to jail if you do not tell me exactly what that argument was about." Amazed, Teresa said nothing. So, Ferreyia said, "If you want to go down the same road as your husband, you can sit here. He refused. He disrespected my sergeant. So you better tell me what your argument was about, or you're going to jail now." Greatly embarrassed, Teresa told Ferreyia about the argument with her husband over the $35 service charge on the credit card bill. Teresa was embarrassed because she regarded it as a trivial personal matter. Ferreyia laughed and said, "If your husband had just told me that, he would be sitting in the air conditioned house with you right now, instead of sitting in a jail cell."

---

[3] While Teresa testified on direct examination that Ferreyia entered the house to demand the driver's licenses, she admitted on cross examination that it might have been Taylor. Both Ferreyia and Taylor testified that it was Taylor who asked Teresa for the driver's licenses. Thus, viewed in the light most favorable to Teresa, the evidence is that it was Taylor, not Ferreyia.

At no point did any of the officers ask Teresa if she had been injured or if Michael was abusive, nor did they ask about the health and welfare of the couple's two daughters or ask to speak to the daughters in order to determine if they were injured.  Similarly, none of the officers asked Michael if he had ever abused Teresa or his daughters.

>  B.   **Clearly Established Law**

Employing essentially the same arguments they raised in pretrial motions[4] for qualified immunity, Defendants Taylor and Ferreyia argue that there was no clearly established law prohibiting their conduct at the Storeys' home.  Specifically, they argue that they did not violate Teresa's Fourth Amendment rights by (1) entering her home to close the front door, (2) ordering her to stay in her home, or (3) entering her home to command her to produce the couple's driver's licenses.

Warrantless searches inside a home are presumptively unreasonable.  *Payton v. New York*, 445 U.S. 573, 586 (1980).  However, Defendants reason that the trend in federal law is to permit officers responding to a domestic disturbance not only to order an occupant to step outside so that they can talk to the spouses separately, but also to allow police to enter a home without a warrant in order to ensure that the occupants are safe.  In this regard, Defendants rely upon cases from other

---

[4] Defendants did not file dispositive pretrial motions regarding any of Teresa's claims against them, but rather focused solely on Michael's claims.  There, the question revolved around whether the police could lawfully order Michael to step from his threshold onto his front porch so that they could question him away from his wife.  This question, in turn, was determinative of whether the police could arrest Michael for failure to obey a lawful order.  In its Memorandum Opinion and Order entered January 30, 2009 [Doc. No. 46], the Court concluded that, based upon the evidence submitted on summary judgment, the Defendants lawfully ordered Michael to step outside the house so that they could question him separately from Teresa.  The Court expressly did not decide whether or not the officers' entry into the home or seizure of Teresa was protected by qualified immunity.  *Id.* at 7, 10.  Later, the Court denied Michael's motion to reconsider that decision.  *See* Doc. No. 81.

circuits, including *United States v. Cunningham*, 133 F.3d 1070 (8th Cir. 1998); *United States v. Richardson*, 208 F.3d 626 (7th Cir. 2000), *United States v. Brooks*, 367 F.3d 1128 (9th Cir. 2004), *Hanson v. Dane County, Wisconsin*, 608 F.3d 335 (7th Cir. 2010), and *Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998).  In each of these cases the court found that officers were justified in entering a home in response to either a 911 call from the house or a third party report of a domestic disturbance.  And in each case the officers entered the home—an act otherwise forbidden by the Fourth Amendment—in order to determine whether the occupants were safe based on an objectively reasonable belief that an exigency existed.  For example, in *Hanson* the police entered the dwelling after determining that a husband and wife had argued and the husband had pushed the wife.  608 F.3d at 337-38.  Even after the wife, who had dialed 911, asked the police to leave, they were justified in staying in the home to question the husband, wife, and two teenage daughters separately in order to determine that the situation had defused and no one was either injured or under coercion by an abuser.  *Id*.  Similarly, in *Tierney* a police officer responded to what he was told was a "bad" domestic disturbance, the worst yet at this location according to experienced observers.  *Tierney*, 133 F.3d at 197.  When the officer arrived at the scene, neighbors informed him that the shouting had ended right before his arrival, and as he approached the house, he heard nothing but found a broken window pane.  *Id*. Upholding the officer's warrantless entry into the home, the Second Circuit concluded, "[i]t was reasonable for Davidson to believe that someone inside had been injured or was in danger, that both antagonists remained in the house, and that this situation satisfied the exigent circumstances exception." *Id*.  Once inside, the officer encountered a red-faced woman who appeared upset, along with her young children.  She asked him to leave, but fearing for the safety of the children, he not only refused, but also searched the children's bedroom.  Again, the Second Circuit found this to be reasonable.

7

Defendants' reliance upon these cases is misplaced. It is clearly established that "a warrantless search must be strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (internal quotation marks omitted). In each of the cases that Defendants cite, the police conducted the warrantless entry because they reasonably believed that someone inside might have been injured or in danger, and therefore they needed to perform either a protective sweep for the safety and welfare of the occupants or to carry out a brief investigation to determine if anyone in the home was in danger. According to the evidence at trial, that is not what occurred in this case. Once the Defendants removed Michael from the home, there is no evidence that the Defendants had a reasonable belief that an occupant of the home might have been injured or in danger. None of the Defendants testified as to any circumstances, beyond the initial 911 call, that led them to believe anyone might be injured in the house. None of them testified that Teresa or her daughters appeared hurt, nor did they testify as to any uncertainty or reason for concern as to their safety. Teresa testified that Defendants did not explain to her what was happening or ask her if she had been the victim of domestic violence. Ferreyia testified that he did not recall asking either Michael or Teresa about spousal abuse. Taylor testified that he ordered Michael outside so that the Defendants could make sure that all occupants in the house were safe, but there was no testimony that any of the Defendants took steps in that regard. Taylor testified that he routinely asks individuals who are the subject of domestic violence calls about the nature of their argument; however, he did not testify that any Defendant talked to the Storeys or their daughters to make sure that they were safe and not the victims of abuse. There is no evidence that any of the officers checked on the physical welfare of the Storeys' two teenage daughters. Rather, the evidence at trial was that Defendant Ferreyia entered the Storey's home in order to shut the door and order Teresa to stay inside, while Taylor entered the house to demand that Teresa provide him with the

couple's driver's licenses. In other words, any claim that the Defendants have on paper to a reasonable belief in the exigency of the situation is belied by the evidence of their utter lack of action to ensure the safety of the Storey family. Thus, the police action for which courts have carved out an exception to the Fourth Amendment—reasonable belief in the need to ensure the safety of the occupants of the home based upon a reasonable belief of exigency—is absent. And there is no exception to the warrant requirement for entering a home for the purposes that Defendants Ferreyia and Taylor entered the Storeys' house. The facts and evidence presented at trial simply do not place this case within the ambit of *Cunningham*, *Richardson*, *Brooks*, *Hanson*, or *Tierney*.

Similarly, there was ample evidence at trial from which the jury could have concluded that the Defendants seized Teresa when they ordered her to stay inside her house and when they subsequently entered her home to ordered her to provide them with identification. Teresa testified that she did not feel free to leave when Ferreyia ordered her to stay in the house, and that her feeling continued when either Ferreyia or Taylor entered the house again to demand the couple's driver's licenses. She asked him for permission to leave the room in order to retrieve the licenses. Based on the evidence at trial the jury could have concluded that no reasonable person in Teresa's position would have felt free to leave during the entirety of her encounter with the Defendants. Furthermore, there was no evidence at trial (and no argument from the Defendants) that they had either reasonable suspicion to detain or probable cause to arrest Teresa. It is clearly established that detentions in the absence of reasonable suspicion or probable cause violate the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 590 (1980) (absent exigent circumstances and probable cause, or a warrant, officers may not enter a home and seize an individual for routine investigatory purposes, no matter whether the seizure is an investigatory stop or an arrest). Defendants did argue that, due to officer safety concerns, they needed to keep Teresa away from the front porch while they

arrested Michael. However, the evidence showed that by the time they entered Teresa's home the second time to demand her identification, Defendants had completed Michael's arrest and that initial concern had abated. The Court concludes that there was sufficient evidence to support the jury's decision that Defendants seized Teresa, and further concludes that the seizure violated clearly established law.

Accordingly, the jury could have reasonably concluded that Defendants violated Teresa's Fourth Amendment rights when they entered her home to shut her door, order her to stay in the house, and demand the Storeys' identification. The Court concludes that in doing so, Defendants violated clearly established law prohibiting government intrusions into the sanctity of the home absent a need to ensure the safety of the occupants. Further, there was simply no evidence at trial of the officers' reasonable belief in a need to enter the home due to exigent circumstances. Thus, the renewed motion for judgment as a matter of law based on qualified immunity will be denied.

## II.    UNLAWFUL ENTRY BY THOMAS TAYLOR

Defendant Taylor argues that he is entitled to judgment as a matter of law because there is no evidence that Taylor ever entered the Storeys' home at any time except to arrest Michael. He bases his argument on the fact that Teresa testified that it was Ferreyia, not Taylor, who entered her home in an aggressive manner to demand driver's licenses, while in contrast, Taylor testified that he asked for licenses but remained outside the house.

Teresa argues that it is too late for the Defendants to raise this argument, which they failed to preserve on the record at trial. The record supports Teresa's position. Defendants do not respond to this argument, and instead they merely reiterate that there is no evidence that Taylor entered the Storeys' home. However, Defendants may not "renew" a Rule 50 motion that they never made in

10

the first instance. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000) ("A party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion" for judgment as a matter of law). Thus, Defendants' motion should be denied on this grounds.

As an alternate holding, the Court concludes that there is legally sufficient evidence to support the jury's finding in favor of Teresa on this issue. First, though Teresa testified in detail about Ferreyia's actions inside her home on September 7, 2007, she admitted on cross examination that due to the stress of the situation, she could be mistaken as to the identity of the officer who entered her home, and that the officer might have been Taylor. Second, both Taylor and Ferreyia testified that Taylor asked Teresa for the couple's driver's licenses, though they also stated that Taylor did not enter the house to do so. This evidence is sufficient not only for the jury to believe that Teresa's account of the officer's actions in entering her home amounted to an unlawful entry, but also for them to conclude that she was merely mistaken as to the identity of the officer who entered her home, pointed at her, and demanded the identification. Thus, the Court will deny this portion of Taylor's motion.

### III.   UNREASONABLE SEIZURE BY THOMAS TAYLOR

Defendants argue that there is no evidence that Taylor seized Teresa. Again, Teresa points out that Defendants waived this argument by failing to raise it at trial, a fact that Defendants do not dispute. Because Defendants have failed to properly preserve this argument, the renewed motion for judgment as a matter of law will be denied.

As an alternate holding, this motion will be denied for the additional reason that it is moot. The Court has already concluded that there is sufficient evidence to support the jury's finding that

Taylor unlawfully entered the Storeys' home. Question 3 on the Special Verdict Form asked whether Ferreyia or Taylor had *either* unlawfully entered the home *or* had seized Teresa. Though the jury was asked to answer separately as to Ferreyia and Taylor, it was not asked to specify as to the occurrence of an illegal entry or seizure. And, as Teresa points out, Defendants did not object to the verdict form at trial. This means that the jury's verdict is valid if there is evidence to support either an unlawful entry or an unlawful seizure by Taylor. As described above, the jury reasonably could have found an unlawful entry by Taylor. Accordingly, the question of whether he also unlawfully seized Teresa is moot.

## IV.    NOMINAL DAMAGES AGAINST ROBERT FERREYIA

As discussed above, there was sufficient evidence at trial for the jury to conclude that Defendants entered the Storey's house and unconstitutionally seized Teresa in her home. However, Ferreyia argues that there was insufficient evidence for the jury to determine that he unlawfully entered the house. He argues that the evidence showed that Michael Storey was concerned about his dogs getting out, and therefore Ferreyia's brief entry into the entryway of the home to close the front door was consensual.

The Court concludes that it need not reach this issue because, as discussed above, there was ample evidence for the jury to conclude that Ferreyia participated in the seizure of Teresa when he stepped into her home and forcefully ordered her to "stay in the house." As the Court has already explained, the jury easily could have concluded that this constituted a violation of Teresa's clearly established Fourth Amendment rights to be free from unreasonable seizures, and therefore the Court need not reach the issue of whether Ferreyia unlawfully entered the home as well. There was sufficient basis for the jury to award Teresa one dollar in nominal damages against Ferreyia.

V.      THE SIZE OF THE PUNITIVE DAMAGES AWARD AGAINST TAYLOR

The jury awarded Teresa $1 in nominal damages and $7,000 against Taylor in punitive damages. Now, Taylor moves to remit the award, arguing that it was excessive in violation of the Due Process Clause under *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

Typically, the Court will evaluate the constitutionality of a punitive damages award by following the guideposts provided by the Supreme Court, assessing (1) the degree of reprehensibility, (2) the disparity between the harm suffered and the punitive damages award, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 574–75, 116 S.Ct. 1589. In this case, Taylor challenges the $7,000 punitive damages award on the first and second factors only.

With regard to the degree of reprehensibility, Taylor argues that his conduct did not relate to the health or safety of Teresa because by awarding only $1 in compensatory damages, the jury concluded that that she had suffered no significant emotional injury. He also points out that there was no evidence that his conduct was anything other than an isolated incident, that Teresa was financially vulnerable, or that it involved malice, trickery or deceit. Teresa does not dispute any of Taylor's arguments.

Next, Taylor argues that the disparity between the harm suffered by Teresa and the punitive damages award is too great, arguing that the 7,000 to 1 ratio is excessive. In support of his position, Taylor cites *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008), which the Court concludes actually supports the punitive damages award in this case. In *Mendez*, the jury awarded the plaintiff $2 in nominal damages for her false arrest and illegal search claims and $250,000 in

punitive damages against the police officer, whom it found to have acted in reckless disregard of her constitutional rights. After trial, the County moved to remit the award. The district court agreed and reduced the punitive damages award to $5,000, finding the punitive damages award excessive. In remitting the award, the district court found that the officer's conduct in failing to translate the consent-to-search form and illegally detaining Mendez at the police station was not so reprehensible as to justify the jury's award of punitive damages. The court noted, among other things, that although the jury found that the officer acted with reckless disregard for Mendez's rights, there was no evidence that he acted with malice. Accordingly, on the range of reprehensible conduct identified by the Supreme Court, the district court found that the officer's conduct was closer to negligence than it was to malice. The district court also found that there was no evidence that the officer had acted in the same manner on any other occasion, thus making this the kind of isolated incident the Court found less condemnable than repeated conduct. Finally, the officer's conduct did not pose any risk to Mendez's bodily health or safety, and the district court noted that the jury's award of nominal damages ultimately indicated that the harm caused by the officer's illegal conduct was minimal.

On appeal the Ninth Circuit upheld the $5,000 punitive damages award. While noting that the punitive damages award was considerably in excess of the single-digit ratios that are typically found to be appropriate, the Ninth Circuit noted that the Supreme Court

> has carved out an exception relevant to this case, which is that 'ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages.' Constitutional torts such as Mendez's are far more likely to present such scenarios. Ratios in excess of single digits in § 1983 suits therefore will not generally violate due process when the victim suffers no compensable injury. If we were to hold otherwise, then any appreciable exemplary award would produce a ratio that would appear excessive by this measure. This would conflict with the Court's clear guidance that punitive damages should remain available under § 1983 even in the

> absence of a compensable injury, and that in such situations "punitive damages may be the only significant remedy available.

*Mendez*, 540 F.3d at 1121-22 (internal citations and quotations omitted).

Similarly, in *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 154 (4th Cir. 2008), while noting that punitive damages awards that exceed a single digit ratio when compared to compensatory damages generally do present constitutional problems, the Eighth Circuit also observed that the Supreme Court has long recognized that "greater ratios may comport with due process when reprehensible conduct results 'in only a small amount of economic damages.'" *Id.* (quoting *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513).  Other circuits have reached similar conclusions, also reasoning that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount "would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364-65 (11th Cir. 2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05). *See also Abner v. Kan. City S. R.R.*, 513 F.3d 154, 165 (5th Cir. 2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir. 2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) (rejecting ratio analysis because "the compensatory award here was nominal, [so] any appreciable exemplary award would produce a ratio that would appear excessive by this measure").  In light of the foregoing, the Court concludes that the 7,000 to 1 ratio presented in this case, while large, is not invalid in light of the circumstances.  The single-digit ratio that Taylor proposes would result in a punitive damages award so small that it would fail to serve its

purpose as a deterrent to future unconstitutional conduct.

Finally, the Court cannot conclude that the $7,000 punitive damages award is unconstitutionally excessive in light of punitive damages imposed in other similar cases. Taylor has failed to point to such a case, and the Court is aware of none. Indeed, the reasoning in *Mendez*—a case cited by and relied on by Taylor—supports the reasonableness of the $7,000 punitive damages award in this case.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Judgment Notwithstanding the Verdict* [Doc. No. 101] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**